IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM DELANE KRASGROW, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 15-1676 ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge

# OPINION
# and
# ORDER OF COURT

## SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 12 and 14]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion [ECF No. 13] is denied and Plaintiff's Motion [ECF No. 11] is granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with the Opinion that follows.

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Child's Insurance Benefits ("CIB") under Title II of the Social Security Act ("Act")[1] and for Supplemental Security Income ("SSI")

---

[1] Social Security Regulations provide for the payment of child's insurance benefits on the earnings record of an insured person who is entitled to benefits if the claimant is 18 years of age or older and has a disability that began before attaining age 22. 20 C.F.R. § 404.350(a)(5).

1

under Title XVI of the Act. Plaintiff applied for CIB on November 14, 2012, and for SSI on October 16, 2012, alleging an onset date of June 14, 1991.[2] [ECF Nos. 9-6, at 193-206; 9-7, at 214-227]. Plaintiff alleged that he was disabled due to developmental disability, needing supervision, cracking under pressure, delayed train of thought, inability to work at a normal pace, seizures, shunt in head, and mild asthma. [ECF No. 9-7, at 219]. The state agency denied his claim initially, and he requested an administrative hearing. [ECF No. 9-5, at 139-43]. Administrative Law Judge ("ALJ") David Brash held a hearing on May 9, 2014, at which Plaintiff was represented by counsel. [ECF No. 9-3]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 73-79. In a decision dated June 27, 2014, the ALJ found that Plaintiff was not disabled under the Social Security Act because he was able to perform a significant number of jobs in the national economy. [ECF No. 9-2, at 12-29]. The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. Id. at 1-3. After thus exhausting his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d

---

[2] Although Plaintiff alleged an onset date of June 14, 1991, the ALJ noted that Plaintiff had filed prior applications that had been denied on September 28, 2012. The ALJ found no basis on which to reopen those prior applications; therefore, the period relevant to the decision at issuer runs from September 29, 2012 to June 27, 2014 (the date of the ALJ's decision). [ECF No. 9-2, at 12].

2

900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by

3

medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### B. WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT DID NOT MEET A LISTING IN APPENDIX I, SUBPART P, REGULATION 4, SPECIFICALLY 12.05C (INTELLECTUAL DISABILITY)

In this case, the ALJ found at step two that Plaintiff had the following severe impairments: epilepsy; asthma; attention deficit hyperactivity disorder ("ADHD"); anxiety disorder; major depression; impulse control disorder (to include conduct disorder); obsessive compulsive disorder ("OCD"); pervasive developmental disorder (also listed as Asperger's syndrome); and borderline intellectual functioning. [ECF No. 9-2, at 15]. At step three, the ALJ found, inter alia, that Plaintiff did not meet the requirements of Listing 12.05(C) (Intellectual Disability). Id. at 15-19.

Plaintiff takes issue with the ALJ's step three analysis. In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Secretary of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Commissioner, 220 F.3d 112, 119 (3d Cir. 2000). The Third Circuit has held that:

> Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings which are "inquisitorial rather than adversarial" and in which "[i]t is the ALJ's duty to

investigate the facts and develop the arguments both for and against granting benefits."

Burnett, 220 F.3d at 120, n.2 (quoting Sims v. Apfel, 530 U.S. 103 (2000)).

Plaintiff argues that the ALJ failed to evaluate appropriately whether he had a condition that met or equaled Listing 12.05 (intellectual disability). See 20 C.F.R. pt. 404, subpt. P, app.1 §§ 12.05. Listing 12.05 – Intellectual Disability provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app.1 § 12.05. As the language of the Listing indicates, an impairment meets this Listing when the requirements of both the introductory paragraph and paragraphs A, B, C *or* D of the Listing are satisfied. See id.; see also id. § 12.00A (stating in reference to Listing 12.05 that "[i]f your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing" (emphasis added)); Gist v. Barnhart, 67 F. App'x 78, 81 (3d Cir. 2003).[3]

In this case, Plaintiff contends that the ALJ erred in finding that he does not meet Part C of the Listing. To satisfy 12.05C, a claimant must, before the age of 22: (1) meet the requirements of the introductory paragraph, *i.e.*, significantly subaverage intellectual functioning with deficits in adaptive behavior manifested; (2) have a valid verbal, performance, or full scale IQ score of 60 through 70; and (3) have a physical or other mental impairment that imposes an additional and significant work-related limitation of function. 20 C.F.R. pt. 404, subpt. P, app.1 § 12.05C; Williams v. Sullivan, 970 F.2d 1178, 1184 (3d Cir. 1992). Here, the ALJ found that Plaintiff did not satisfy Section 12.05C's requirement that he have a valid verbal, performance, or full-scale IQ of 60 through 70.[4] Id. Plaintiff submits that the ALJ improperly rejected Plaintiff's IQ scores, specifically, the perceptual reasoning score of 69 he received when consultative examiner, Mark Goral, Ph.D., administered the Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV") in

---

[3] Although our Court of Appeals recently declined to address whether "deficits in adaptive functioning" remains a requirement under listing 12.05C, see Illig v. Comm'r of Social Sec., 570 F. App'x 262, 265 n.8 (3d Cir. 2014), most district courts have continued to require such a showing. See, e.g., Jones v. Colvin, Civ. Case No. 14-cv-00282, 2015 WL 3646313, at *5 (W.D. Pa. June 10, 2015); Curtis v. Colvin, Civ. Case No. 14-54-E, 2015 WL 1488925, at *4 (W.D. Pa. Mar. 31, 2015); Dignall v. Colvin, Civ. Case No. 13-1572, 2015 WL 853679, at *4 (W.D. Pa. Feb. 26, 2015); see also Gist, 67 F. App'x at 81.

[4] The parties do not dispute the Plaintiff meets 12.05C's additional requirement that he have a physical or other mental impairment that imposes an additional and significant work-related limitation or function.

January 2013, prior to Plaintiff turning 22.[5]  [ECF No. 12, at 7-12].  After careful consideration, I agree.

It is well-established that an ALJ "is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record."  Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. 2003).  A test is invalid, for example, if there is evidence the claimant deliberately attempted to distort the results, or the testing conditions could have negatively affected the score.  Arrington v. Colvin, No. 12-213, 2014 WL 108589, at *3 (W.D. Pa. Jan. 10, 2014). A test might be inconsistent with the record if it is inconsistent with the claimant's prior education or work history, daily activities, behavior, or other aspects of his life.  Id.  The ALJ, however, must support his finding that a score is invalid with substantial record evidence; he cannot reject IQ scores based on personal observations of the claimant and/or speculative inferences drawn from the record. Markle, 324 F.3d at 186.

Here, the ALJ found that Plaintiff's perceptual reasoning IQ score of 69 was not an accurate reflection of Plaintiff's functioning for several reasons: (1) his full-scale IQ score of 73 was within the borderline range of intelligence; (2) when administered achievement testing at the same time, Plaintiff's standard scores were above his overall IQ scores and he did not meet the criteria for the diagnosis of any specific learning disorder; (3) Plaintiff was able to obtain his high school diploma; and (4) his level of daily activity was not reflective of significant deficits in adaptive functioning.  [ECF No. 9-2, at 18-19].  As Plaintiff correctly notes, however, not all of these reasons properly qualify as substantial evidence in this case.

First, although the ALJ is correct that Plaintiff's full-scale IQ score of 73 falls within the borderline range of intelligence, the law is clear that, "[i]n cases where more than one IQ is

---

[5] In addition to the perceptual reasoning score of 69, Plaintiff obtained a verbal comprehension score of 87, a working memory score of 71, a processing speed score of 81, and a full-scale IQ score of 73.  [ECF No. 9-2, at 18, citing Ex. B6F].

7

customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series," the ALJ must "use the lowest of these in conjunction with 12.05."  20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00D(6)(c); see also Markle, 324 F.3d at 186; Illig, 570 F. App'x at 265.  Thus, the ALJ erred to the extent he relied on Plaintiff's full-scale IQ score of 73 to discredit his perceptual reasoning score of 69.  See, e.g., Loepp v. Colvin, No. 15-51, 2015 WL 5638020, at *2 (W.D. Pa. Sep. 24, 2015).[6]

Second, although the ALJ is correct that Plaintiff's achievement test scores exceeded his overall IQ test scores and that Dr. Goral concluded that Plaintiff did not meet the criteria for the diagnosis of any specific learning disorder, these facts do not undermine the validity of Plaintiff's performance IQ score.[7]  Importantly, although Dr. Goral noted a statistically significant difference between Plaintiff's highest and lowest IQ scores, he did not find the low performance IQ score invalid.  Rather, he explained that the scores indicated that Plaintiff "performs considerably better on tasks that are verbal, that are dependent upon formal schooling, and which require skills in the analysis and synthesis of information," and that he "performs *considerably worse* on tasks that are nonverbal, that require rapid processing of information, and which are not dependent on formal schooling."  [ECF No. 9-9, Ex. B6F (emphasis added)].  Dr. Goral further opined that Plaintiff's

---

[6] Although the IQ test at issue here has been modified since the Listings were created, the "verbal comprehension score" is equivalent to "verbal IQ," and the "perceptual reasoning index score" is the equivalent of "performance IQ."  See Martin v. Comm'r of Soc. Sec. Admin., Civil No. SAG-12-1130, 2013 WL 4512071, at *2 (D. Md. Aug 22, 2013).

[7] Defendant cites the unpublished district court opinion in Manigault v. Astrue, Civil Action No. 08-1409, 2009 WL 1181253 (W.D. Pa. Apr. 30, 2009), for the proposition that a diagnosis of borderline intellectual functioning implicitly invalidates an IQ score within the intellectual disability range.  See ECF No. 14, at 13-14 (citing Manigault, 2009 WL 1181253, at * 8).  I disagree that Manigault is apposite in this case.  Among other things, in Manigault, the psychologist who administered the IQ test in question explicitly commented in his report that the low test scores should be interpreted with caution because the claimant was distracted by her child and also showed poor effort and low frustration tolerance during the testing. Manigault, 2009 WL 1181253, at *9.  In this case, by contrast, the administering psychologist affirmatively found Plaintiff's IQ scores were valid and reliable estimates of his actual functioning level.  [ECF No. 9-9, Ex. B6F].  To the extent Defendant further points to Manigault in support of her argument that Plaintiff failed to meet the "deficits in adaptive functioning" prong of Listing 12.05's introductory paragraph, the ALJ, as set forth infra, did not conduct an analysis of this prong sufficient to allow for meaningful review.

"overall intellectual and achievement test scores are *valid and reliable* estimates of his actual functioning level." Id. (emphasis added); see also Markle, 324 F.3d at 187 (positive remarks about claimant in psychologist's report were not basis for rejection of IQ scores where psychologist concluded the scores were valid). For these reasons, these portions of Dr. Goral's report are not substantial evidence that Plaintiff's IQ score was invalid.

Third, although an IQ score might be inconsistent with the record if it is inconsistent with the claimant's prior education or work history, daily activities, behavior, or other aspects of his life, it is questionable whether the ALJ properly identified such inconsistencies in this case. Specifically, the ALJ noted that Plaintiff was able to obtain his high school diploma and that he engaged in daily activities such as leaving his group home facility and using public transportation without issue, grocery shopping, hanging out with friends, drawing, watching television, preparing simple meals, doing housework, assisting his girlfriend with childcare responsibilities, counting change, reading, caring for his personal needs, and grooming. [ECF No. 9-2, at 16-19]. Courts within this circuit, however, have found that similar activities are not inconsistent with a qualifying IQ score. See, e.g., Markle, 324 F.3d at 184-87 (daily activities did not undermine validity of low IQ score where Plaintiff had obtained a GED, lived alone, took care of his apartment, independently performed self-care needs, payed his own bills, could add and subtract, could use an ATM, self-administered his medication, and had been employed painting and wallpapering homes and cutting grass); Ogin v. Comm'r of Social Sec., Civil Action No. 3:13-cv-01365, 2014 WL 2940599, at *11 (M.D. Pa. June 30, 2014). Even if Plaintiff's daily activities were arguably inconsistent with his perceptual reasoning IQ score under the facts of this case, it is unclear whether the ALJ would have reached the same conclusion based on these daily activities alone, absent the improper consideration of his full-scale IQ score and portions of Dr. Goral's report. For these reasons, remand for further explanation is necessary on this issue.

Defendant argues that regardless of whether Plaintiff's perceptual reasoning IQ score was valid, the ALJ's step three analysis passes muster because Plaintiff did not meet the requirements of Listing 12.05's introductory paragraph – i.e., that Plaintiff demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to the age of 22. [ECF No. 14, at 11-15]. Although, as set forth above, the required level of severity for this disorder is met only when the requirements of both the introductory paragraph and paragraphs A, B, C *or* D of the Listing are satisfied, the ALJ focused solely on the paragraph C criteria in his opinion. Contrary to Defendant's suggestion, the ALJ failed to conduct a distinct analysis of the applicability of 12.05's introductory paragraph to the facts of this case. Indeed, the only mention of the introductory language that the ALJ even arguably made in his opinion is his comment in the final sentence of his 12.05C analysis that Plaintiff's "level of daily activity is not reflective of significant deficits in adaptive functioning." [ECF No. 9-2, at 18-19]. In addition to his failure to identify the introductory paragraph as a separate criterion, the ALJ did not cite any authority for relying on the daily activities he listed, did not set forth the standard he used in making his assessment, and failed to list the factors, if any, he considered in evaluating Plaintiff's alleged deficits in adaptive functioning. See id.; see also Loepp, 2015 WL 5638020, at *2. This cursory analysis of the introductory paragraph is simply insufficient to allow for meaningful review of this issue.[8]

The above errors necessitate a remand to the Commissioner for further proceedings. In so ordering, I express no opinion on whether Plaintiff satisfies all of the requirements of Listing

---

[8] On pages 13-15 of her Brief, Defendant lists numerous reasons that allegedly support her argument that Plaintiff did not possess the requisite deficits in adaptive functioning to satisfy Listing 12.05. [ECF No. 14, at 13-15]. These reasons, however, were not relied upon by the ALJ, who, as set forth above, failed to conduct the requisite analysis. The review of an administrative order must be judged upon those bases set forth and disclosed in that order. Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001). To consider *post hoc* rationalizations not listed by the ALJ runs contrary to the law. Id. Therefore, it is improper for me to consider these arguments here.

12.05C. Upon remand, however, the ALJ must support any conclusions he reaches in that regard with substantial evidence, including conclusions regarding whether Plaintiff meets the requirements of both the introductory paragraph and paragraph C of the Listing.

## C.     WHETHER THE ALJ'S RFC ASSESSMENT IS DEFICIENT

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can never climb a ladder, rope, or scaffold; he must avoid even moderate exposure to gases, fumes, and like respiratory irritants, as well as to temperature extremes and humidity; he must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; he is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; he is limited to no work-related contact with the public, only occasional and superficial interaction with coworkers, and no more than occasional supervision; and he is limited to a low stress work environment, which means no production rate pace work, but, rather, goal oriented work with only occasional and routine change in work setting.  [ECF No. 9-2, at 19-27].

Plaintiff argues that this RFC finding is flawed because it is "vague" as to the definition of "simple, routine, and repetitive" tasks and is not compatible with the definition of a severe impairment in the regulations.  [ECF No. 12, at 12-13].  The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Conversely, a non-severe impairment is "[a]n impairment or combination of impairments" that does "not significantly limit [a claimant's] physical or mental ability to do basic work activities."  Id. §§ 404.1521(a), 416.921(a).  Examples of basic work activities include, inter alia, "[u]nderstanding, carrying out, and remembering simple instructions."  Id. §§ 404.1521(b),

416.921(b). Plaintiff contends that the limitation to "simple" work in the ALJ's RFC finding is inadequate because it is "not truly a limitation at all" and implies Plaintiff suffers from non-severe impairments related to mental tasks in contradiction to the ALJ's findings of severe mental impairments at step two of the evaluation process. [ECF No. 12, at 12-13]. This argument confounds logic and is plainly without merit.

As Defendant notes, Plaintiff's argument conflates the requirements of a step two severity finding and the RFC assessment. [ECF No. 14, at 16]. A claimant's RFC is the most that he can still do despite his functional limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). In assessing a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments, both severe and non-severe. Id. In terms of mental abilities, "[a] limited ability to carry out certain mental activities, *such as limitations in understanding, remembering, and carrying out instructions*, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." Id. §§ 404.1545(c), 416.945(c) (emphasis added). Here, the ALJ did not merely limit Plaintiff to "simple, routine tasks." Rather, as set forth in detail above, the ALJ's RFC assessment contained a multitude of additional restrictions, including mental restrictions limiting him to no work-related contact with the public, only occasional and superficial interaction with coworkers, and a low-stress work environment with no production rate pace work, but only goal oriented work with no more than occasional and routine changes in work setting. [ECF No. 9-2, at 19]. These restrictions plainly reflect the ALJ's assessment that Plaintiff suffered from more than minimal impairments.

For these reasons, I reject Plaintiff's argument that the RFC assessment, including its limitation of Plaintiff to "simple, routine tasks," is incompatible with the regulations or the ALJ's step two severity findings.

### III. <u>CONCLUSION</u>

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because he failed to conduct a full and proper analysis of Listing 12.05C. The case therefore is remanded for further consideration in light of this Opinion. For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ADAM DELANE KRASGROW,

    Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

Civil Action No. 15-1676

AMBROSE, Senior District Judge

# ORDER OF COURT

AND NOW, this 8th day of December, 2016, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment [ECF No. 11] is GRANTED in part and the matter is REMANDED for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment [ECF No. 13] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge